**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cristobal Rodriguez, et al., <br> Plaintiffs, <br> v. <br> Taylor & Francis Group LLC, et al., <br> Defendants. | No. CV-23-00576-PHX-GMS <br><br> **ORDER** |

Pending before the Court is Defendant Taylor & Francis Group, LLC's Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim (Doc. 10). For the reasons detailed below, Defendant's Motion is granted with one final leave to amend.

## BACKGROUND

This action concerns Dr. Cristobal Rodriguez's ("Plaintiff") allegations of defamation and trade libel against Taylor & Francis Group, LLC ("Defendant"). Dr. Rodriguez is the Associate Dean of Equity, Inclusion, and Community, as well as an Associate Professor of Educational Leadership and Policy studies, at the Mary Lou Fulton Teachers College at Arizona State University. (Doc. 9 at 2). He researches inclusion and equity in education for "dual language learners, Black, Latino, and Indigenous" families and students. (*Id.*). On March 7, 2022, Dr. Rodriguez and two other authors published an article in *Educational Studies* entitled "Our Separate Struggles Are Really One": Building Coalitions and Solidarity for Social and Racial Justice in Education ("Rodriguez Article").

(*Id.*)  *Educational Studies* is an education journal published by Defendant.  (*Id.* at 3).

Soon after publication, Dr. Sonya Douglass Horsford contacted Defendant and reported substantial overlap between the Rodriguez Article and an article she and two co-authors published in 2019.  (*Id.*).  She titled that article Our Separate Struggles are Really One: Building Political Race Coalitions for Educational Justice ("Horsford Article").  (Doc. 10-3 at 2).  Defendant then contacted Plaintiff and his co-authors and told them that Dr. Horsford raised concerns.  (Doc. 9 at 3).  On March 12, 2022, Dr. Rodriguez contacted Defendant to dispute any allegations of plagiarism and offered to make changes to the Rodriguez Article to alleviate their concerns.  (*Id.*).  Plaintiff and his co-authors submitted a revised draft of the Rodriguez Article that included different citations and a new title.  (*Id.* at 4).  Defendant only responded to Plaintiff by informing him that the editorial board was investigating the matter.  (*Id.*).

On June 20, 2022, Defendant informed Plaintiff that it would retract the Rodriguez Article but gave Plaintiff no specific reason.  (*Id.*).  Defendant then retracted the Rodriguez Article and published a public notice of retraction on its website.  (*Id.* at 5).  The notice referenced both the Rodriguez Article and the Horsford Article, and included a brief explanation of Defendant's reasoning:

> Since publication, significant concerns have been raised about the fact that this article has substantial overlap with the following article, particularly in title, references, and ideas pertinent to the content . . . As plagiarism is a serious breach of publishing ethics, we are retracting the article from the journal. We have been informed in our decision-making by our policy on publishing ethics and integrity and the COPE guidelines on retractions.

(Doc. 10-2 at 2).  Dr. Rodriguez alleges that "[t]he continued presence of the retraction statement on Defendant's website has the extreme potential to cause harm to Dr. Rodriguez and his professional reputation, including prohibiting and preventing him from opportunities for future professional advancement."  (Doc. 9 at 6).  Additionally, Plaintiff alleges that Arizona State University placed him on administrative leave and that he lost

his administrative position because of Defendant's public notice. (*Id.* at 7). The loss of that position, Plaintiff alleges, included a substantial loss in income. (*Id.*).

Plaintiff has two pending claims against Defendant: one for defamation and one for trade libel. (Doc. 9 at 7–8). Plaintiff originally filed his Complaint in the Superior Court of Arizona in Maricopa County on November 9, 2022. (Doc. 1 at 2). On March 2, 2023, Plaintiff filed his First Amended Complaint. (Doc. 1-5 at 9). Defendant removed the action to this Court on April 5, 2023. (Doc. 1). This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. On April 27, 2023, Plaintiff filed his Second Amended Complaint ("Complaint") (Doc. 9).

**DISCUSSION**

**I.   Legal Standard**

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When analyzing a complaint for failure to state a claim, "allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). However, legal conclusions couched as factual allegations do not receive a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).[1]

**II.  Analysis**

**1.  Defamation**

"To state a claim for defamation under Arizona law, a plaintiff must plead: (1) a false and defamatory statement of and

---

[1] Defendant's Motion to Dismiss (Doc. 10) includes three documents attached as appendices: the Rodriguez Article, Defendant's public notice of retraction, and the Horsford Article. These documents may be properly considered by the Court without converting the Motion to Dismiss into a Motion for Summary Judgment based on the "incorporation by reference" doctrine, because the Plaintiff relies on the documents in his complaint, the Defendant attached the documents to its motion to dismiss, and neither party disputes their authenticity. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

>concerning the plaintiff; (2) an unprivileged publication of that statement to a third party; and (3) fault amounting to at least negligence on the part of the publisher or 'actual malice,' depending on the status of the plaintiff as a private or public figure and whether the statement at issue involves a matter of public concern."

*Greschner v. Becker*, No. CV-14-02352-PHX-GMS, 2015 WL 685156, at *2 (D. Ariz. Feb. 18, 2015) (quoting *Boswell v. Phx. Newspapers, Inc.*, 152 Ariz. 1, 3, 730 P.2d 178, 180 (Ariz. Ct. App. 1985). Because Plaintiff is a teacher employed by a public institution, the parties agree that he is a public figure subject to a higher showing of "actual malice." (Doc. 10 at 8–10; Doc. 13 at 7–9); *see also Sewell v. Brookbank*, 119 Ariz. 422, 425, 581 P.2d 267, 270 (Ariz. Ct. App. 1978). "A statement is made with 'actual malice' when it is made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Greschner v. Becker*, No. CV-14-02352-PHX-GMS, 2016 WL 3969941, at *4 (D. Ariz. July 25, 2016) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964)). "Actual malice" means knowledge of falsity or conscious disregard of the truth. *Scottsdale Publ'g v. Superior Court of Maricopa Cnty.,* 159 Ariz. 72, 82, 764 P.2d 1131, 1141 (Ct. App. 1988). (defining "actual malice" as either "knowingly" publishing a false statement or doing so when the defendant "entertained serious doubts as to the truth of the accusation, but proceeded in conscious disregard of such doubts"). Other cases suggest that the standard is either knowing or publishing a false statement with a subjectively "high degree of awareness of [its] probable falsity." *Harte-Hanks Commc'ns v. Connaughton,* 491 U.S. 657, 688 (1989). Importantly, the actual malice standard applies to the truthfulness of the Defendant's statement—it is not to be confused with the intent behind Defendant's statement. *Id.* (citations omitted). "Under Arizona defamation law, actual malice may be shown by circumstantial evidence." *Shoen v. Shoen*, 48 F.3d 412, 417 (9th Cir. 1995) (citing *Currier v. W. Newspapers*, 175 Ariz. 290, 294, 855 P.2d 1351, 1355 (Ariz. 1993)).

Plaintiff has failed to plead sufficient facts to make plausible his claims of actual malice. Plaintiff has alleged: (1) that he denied all charges of plagiarism and (2) that Defendant ignored all of Plaintiff's attempts to address any plagiarism concerns. (Doc. 9

- 4 -

at 3–5; Doc. 13 at 7–8). Yet, even taking these allegations as true, they do not, without more, give rise to an inference that when the Defendant made its statements about plagiarism in connection with the retraction, it was doing so with reckless disregard for the truth. This is true, even if Defendant did not respond to Plaintiff, or if Plaintiff volunteered to correct the similar part of his article.

There is no apparent dispute that the Rodriguez and Horsford Articles share a title and some content. Plagiarism does not require a complete identity between articles. *See, e. g.*, *Definition of plagiarism?*, COMM. ON PUB. ETHICS (COPE), https://publicationethics.org/case/definition-plagiarism (last visited Mar. 18, 2024). In other words, a claim that two works contain *some* differences does not necessarily absolve an author of plagiarism—even where those claims are accurate. Generalized allegations alone are too conclusory and thus insufficient to make the actual malice element plausible. *Cf. Harte-Hanks*, 491 U.S. at 688. "[T]he press need not accept 'denials, however vehement; such denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error.'" *Id.* at 691 n.37 (quoting *Edwards v. Nat'l Audubon Soc., Inc.*, 556 F.2d 113, 121 (2d Cir. 1977)). The same is true of academic publishers. And thus, Dr. Rodriguez's denial of plagiarism, even if true, does not give rise to an inference that Defendant made the retraction statement recklessly absent Plaintiff having provided Defendant some exonerating information in connection with his denials that would make plausible his claim that Defendant acted with malice when it proceeded with retraction statement without further consulting him.

Nor is it true that Defendant can always ignore the Plaintiff's denials with impunity, depending upon the specific information that Plaintiff might have provided Defendant in conjunction with his denials. "The purposeful avoidance of the truth is in a different category" from the failure to investigate. *Harte-Hanks,* 491 U.S. at 692. But Plaintiff has not alleged what, if any information he provided Defendant, that is sufficient to infer malice, nor has he alleged other "obvious reasons" that would suggest that Defendant

- 5 -

should have "doubted the veracity" of its statements regarding perjury. *Amant v. Thompson,* 390 U.S. 727, 732 (1968).

### 2. Trade Libel

Under Arizona law, claims for trade libel "are subject to the same first amendment requirements that govern actions for defamation." *UnelkoCorp. v. Rooney,* 912 F.2d 1049, 1057—58 (9th Cir. 1990). This includes the actual malice pleading standard. Thus, until Plaintiff can plead facts sufficient to make the element of malice in the statement plausible, Plaintiff similarly fails to make out a claim of trade libel. Plaintiff's claim for trade libel is, therefore, also dismissed.

## CONCLUSION

Accordingly,

**IT IS THEREFORE ORDERED** Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim is **GRANTED**. Plaintiff has one last chance to amend his complaint. Should he wish to amend his Second Amended Complaint he must do so within thirty days of the date of this Order. Otherwise, the Clerk of Court shall terminate this matter.

Dated this 29th day of March, 2024.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge